EXHIBIT B

| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: September 2, 2014 1:01 PM<br>FILING ID: C8A60C6E912CB<br>CASE NUMBER: 2014CV33413<br><br>**COURT USE ONLY** |
| **Plaintiff:** Leslie S. Nicksic<br><br>**v.**<br><br>**Defendant:** The General Electric Company | |
| Elwyn F. Schaefer, Reg. No. 2479<br>Sara A. Green, Reg. No. 34403<br>Bachus & Schanker, LLC<br>1899 Wynkoop Street, Suite 700<br>Denver, Colorado 80202<br>Phone Number: (303) 825-1961<br>elwyn.schaefer@qwestoffice.net | **Case No.:**<br><br>**Division:** |

**COMPLAINT**

Plaintiff Leslie S. Nicksic ("Plaintiff") states the following Complaint against Defendant General Electric Company ("GE").

**NATURE OF ACTION**

This is an action in tort to recover damages for wrongful termination of employment in violation of public policy. See, *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100 (Colo. 1992); C.R.S. §24-34-402.5; *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371 (Colo. 1997); C.R.S. §24-34-402.5. Plaintiff also has claims for Breach of the Covenant of Good Faith and Fair Dealing and Breach of Employment Contract.

**ALLEGATIONS OF FACT**

1. Plaintiff is an individual citizen of Colorado.
2. GE is a New York corporation doing business in Colorado.

3. At all relevant times, Plaintiff's Manager was Darrick Hueber ("Hueber"), the Global Compliance Leader was Andrew Baird ("Baird"), the General Manager was Tracey Sledge ("Sledge"), the Human Resources Manager was Ryan Smith ("Smith"), Nick Wiseman ("Wiseman") was the Measurement and Control HR Representative, and the Project Manager was Mark Care.

4. Plaintiff began employment with GE on March 27, 2006, as a Project Specialist.

5. Prior to her start date, on March 6, 2006, Plaintiff signed a policy entitled "Conditions of Employment." It states "I acknowledge that I have received and reviewed the Dispute Resolution Process Employee Handbook and that, as provided therein, I will follow the 4-step process to settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment or cessation of employment with General Electric Company or any of its affiliates. I agree that the final step in that process provides *exclusively* for final and binding *arbitration* before a neutral arbitrator…"

6. Plaintiff was scheduled to take vacation beginning December 16, 2011.

7. On or about December 15, 2011, Hueber promised Plaintiff that if she "did what was necessary at the moment," and worked on her projects during her vacation, that she" would be compensated for it later." Plaintiff was not compensated and her vacation time was not carried over.

8. On December 10, 2012, Plaintiff was assigned four new projects in one week in addition to the current 32 active assignments and five active extended warranty jobs she already had pending. The assignment of the new projects prevented Plaintiff from using her paid time off ("PTO") that was previously scheduled.

9. On or about January 25, 2012, Plaintiff complained to Hueber about not being able to carry her vacation days over to the following year and not being compensated for her unused vacation time.

10. Plaintiff was retaliated against after she complained about her inability to use her vacation time. Plaintiff was assigned new short-cycle projects immediately prior to, and during, her scheduled vacation requiring Plaintiff to work during her time off.

11. On July 18, 2013, Plaintiff complained to Wiseman that she was not being allowed her vacation time, was not being compensated for the unused vacation time and her accrued vacation was not being carried over to the following year.

12. On August 8, 2013, Plaintiff had a telephone conference with Wiseman about her July 18, 2013 complaint. Wiseman summarily dismissed Plaintiff's complaint.

13. On August 8, 2013, Plaintiff complained to Sledge that her vacation time had been actively denied by management.

14. On August 16, 2013, Plaintiff told Sledge that "Each year, during the day just prior to my vacation, management assigned me short-cycle jobs that required execution."

15. On October 4, 2013, Plaintiff sent a demand for wages to Defendant pursuant to C.R.S. §13-4-101. Defendant did not respond to the demand.

16. On October 15, 2013, Plaintiff requested that she be allowed to attend the Lean Action Workout, an event in which there are four cross functional teams focusing on Material Flow, ERP Transactional Simplification, Insourcing HMI Production/Test and Bentley Design Engineering. Plaintiff requested to attend this event in order to improve her production.

17. On October 15, 2013, Hueber denied Plaintiff's request stating, "Considering your PM Operational dashboard metric trends and Skillsoft training status I am going to tell Michael that you cannot attend this. Plaintiff responded that "This is your call, but know that the very issues referenced below have been contributing factors to my not being able to focus on improving my dashboard metrics without negatively impacting customer expectations/CTQs."

18. GE utilizes a "Solutions Program" for employee dissatisfaction that contains an alternative dispute resolution procedure. The Solutions Program "provides The General Electric Company…and Covered Employees a fair, quick and efficient process to resolve certain claims arising out of or related to their employment relationship with the Company."

19. On December 6, 2013, Plaintiff began Solutions Level I submission.

20. On or about January 8, 2014, Plaintiff met with Hueber and Wiseman pursuant to the requirements outlined in Solutions.

21. On or about January 9, 2014, Hueber concluded that an alleged investigation into Plaintiff's complaint in regard to her vacation time. Hueber determined that there was "no evidence to support [Plaintiff's] allegation(s) of GE not allowing [Plaintiff] to use [her] vacation or compensating [her] properly."

22. On or about January 14, 2014, Plaintiff began Solutions Level II. On February 10, 2014, Plaintiff met with Sledge and Smith to discuss.

23. On or about January 15, 2014, Hueber attempted to cancel Plaintiff's Flexible Work Arrangement.

24. On or about March 7, 2014, Sledge denied all six of Plaintiff's Solutions Level II claims.

25. On or about March 10, 2014, Plaintiff was placed on a PIP.

26. On or about March 13, 2014, Hueber rejected Plaintiff's nomination for a contribution-based GE Achievement Recognition award. Plaintiff was nominated for the award by a co-worker.

27. On or about March 21, 2014, Plaintiff requested Solutions Level III which is mediation.

28. On or about April 8, 2014, Grace Han ("Han"), GE's Senior Counsel, denied Plaintiff's request for mediation stating that Plaintiff failed "to state a legal basis for [her] claims."

29. Han further stated that "Many employees may feel that they should be paid for vacation that they failed to take but the Company has vacation pay policies that are appropriate and apply to all similarly situated employees."

30. Plaintiff was not treated as other "similarly situated employees."

31. On April 8, 2014, Plaintiff's Flexible Work Arrangement was cancelled by Hueber.

32. GE's Company policy 1.3.7 states "You cannot carry over vacation time one calendar year to the next, with some exceptions. For example, in certain states you may have the option to carry over unused vacation into the next calendar year. If you have a significant conflict and are unable to take all of your vacation time for the calendar year, you may speak with your manager to ask if it is possible for you to carry over unused vacation time to the next year; or receive payment instead of time off."

33. Policy 1.3.8 states "If you earn vacation under the Annual Vacation Allotment Method, you (or your estate) will be paid any unused vacation days when you leave the Company for any reason, including resignation, discharge, retirement, layoff, disability or death. Under the Earn As You Go (EAYG) Method, you may take your annual vacation in advance of actually earning it. However, if you resign or are terminated, only *earned but unused* vacation is paid to you…"

34. On or about April 11, 2014, Baird told Plaintiff that Plaintiff must "satisfy the [Solutions] requirements at each level before proceeding to the next level" and that she had not. Baird told Plaintiff that Plaintiff had "exhausted the Solutions process for the issues [she] raised to date."

35. On April 14, 2014, Plaintiff was constructively discharged.

**FIRST CAUSE OF ACTION**
**(Termination in Violation of Public Policy)**

36. Plaintiff incorporates her prior allegations as if fully set forth herein.

37. Plaintiff reported Defendant's illegal and/or unethical practice to Defendant on several occasions.

38. Defendant's illegal and/or unethical practice is in violation of the Colorado Wage Act, C.R.S. § 8-4-101.

39. Plaintiff was retaliated against for reporting Defendant's violation of the Colorado Wage Act.

40. Plaintiff was constructively discharged for reporting Defendant's wrongful and illegal actions. Such reporting is protected activity. *Kearl v. Portage Environmental, Inc.*, 205 P.3d 496 (Colo. App. Div. 1 2008).

41. The actions of the Defendant were willful and wanton, and/or were done with malice or with reckless indifference to Plaintiff's protected rights.

42. As a result of the actions of Defendant, Plaintiff suffered damages.

**SECOND CAUSE OF ACTION**
**(Implied Covenant of Good Faith and Fair Dealing)**

43. Plaintiff incorporates her prior allegations as if fully set forth herein.

44. Plaintiff and Defendant entered into a contract for employment. Upon employment Plaintiff signed a "Conditions of Employment" which stated that she agreed that in the

event of a dispute "the final step in that process provides *exclusively* for final and binding *arbitration* before a neutral arbitrator…"

45. Defendant also required employees to go through a four step dispute resolution program called "Solutions."

46. Plaintiff took all, or substantially all of the significant steps that the "Conditions of Employment" and the "Solutions" program required.

47. The Defendant unfairly interfered with Plaintiff's right to receive the benefits of the "Conditions of Employment and "Solutions."

48. As a result of the actions of Defendant, Plaintiff suffered damages.

**THIRD CAUSE OF ACTION**
**(Breach of Employment Contract)**

49. Plaintiff incorporates her prior allegations as if fully set forth herein.

50. An at-will employment contract existed between the Defendant and the Plaintiff in which the Plaintiff would be compensated with paid vacation time.

51. Defendant agreed to paid vacation for its employees. This was supported by the consideration of time and labor. Plaintiff reasonably relied on this agreement and sustained damages as a result.

52. The Plaintiff performed the requested and expected work for the Defendant.

53. The Defendant failed to pay the Plaintiff for earned vacation pay.

54. This was a willful breach of contract.

55. Plaintiff's breach of employment contract claim seeks unpaid compensation for the vacation pay withheld by the Defendant.

WHEREFORE, Plaintiff respectfully requests that this court enter judgment in her favor and against Defendant The General Electric Company and award her actual economic damages, non-economic damages, compensatory damages, pre-judgment and post judgment interest at the legal rate; costs; and such other and further relief as the Court deems proper.

Dated this 2nd day of September, 2104.

BACHUS & SCHANKER, LLC

*s/ Elwyn F. Schaefer*

Elwyn F. Schaefer
Sara A. Green
1899 Wynkoop Street, Suite 700
Denver, CO 80202
303-825-1961
elwyn.schaefer@qwestoffice.net

Address of Plaintiff:
3751 Flagler Ave.
Loveland, Colorado 80538